UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re Robert R. LaPorta | ) | Bankruptcy No. 17-B-82300 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | Judge Lynch |
| | ) | |
| | ) | |
| | ) | |

## OPINION

Debtor Robert LaPorta filed his petition for relief under Chapter 11 of the Bankruptcy Code on September 30, 2017. This court had dismissed a prior bankruptcy case within one year of this filing: a Chapter 13 case he commenced on May 30, 2017, which was dismissed on creditor Wells Fargo Bank, N.A.'s motion on August 4, 2017. Therefore, the automatic stay in this case was to terminate within 30 days unless extended pursuant to Section 362(c)(3) of the Bankruptcy Code. The Debtor timely filed his extension request on October 20, 2017. (ECF No. 14.) Three days later, creditor Wells Fargo, asserting a mortgage interest in the Debtor's principal residence, objected to the Debtor's motion to extend the automatic stay and filed its own motion to either lift or annul the automatic stay with respect to the mortgaged residence. (ECF No. 16.) In its motion, the bank alleges that the property was sold at a judicial sale on held October 2, 2017, and therefore requests annulment of the stay to retroactively permit such sale to have effect.

Page 1 of 16

On October 27, 2017, the parties presented their competing motions and the court allowed limited argument. Although the parties disputed a number of factual issues relating to the two motions, including whether there had been a change in circumstances between the failed Chapter 13 case and the current Chapter 11 case, whether it was economically feasible for the Debtor to reorganize under Chapter 11, whether the case was filed for a legitimate purpose and whether Wells Fargo was aware of the bankruptcy case at the time it permitted the sale to occur, the parties also raised a dispute of law. Wells Fargo contended in its motion and at oral argument that because there was a foreclosure judgment and the statutory period for redemption expired pre-petition the Debtor cannot restructure its debt through a Chapter 11 plan as a matter of law. At that time, the court gave the parties leave to file simultaneous briefs and ordered the automatic stay extended as to all creditors other than Wells Fargo. It then temporarily extended the automatic stay as to Wells Fargo through November 29, 2017, for continued hearing on the motions.

The court heard further oral argument on the motions on November 29, 2017.[1] Although the court had requested briefing on the issue of whether the Debtor's rights in the property had terminated pre-petition, the creditor's brief instead addressed the issue of "whether the redemption date, which is determined by a State Court, is tolled or extended by the filing of the Chapter 11 Bankruptcy." The Debtor's brief addressed

---

[1] Although the briefs were due on November 17, the Debtor filed his brief electronically on November 18, 2017 at 1:10 a.m. At the November 29, 2017 hearing, counsel for Wells Fargo made an oral request to strike the Debtor's brief as late-filed and unresponsive to the question asked by the court. For the reasons stated on the record, the court denied that request. The court inquired at the hearing if Wells Fargo wished to file a reply to the Debtor's late-filed brief, but counsel indicated that Wells Fargo would stand on its own brief and oral argument.

the question of "whether chapter 11 could be used to cure a mortgage default if filed prior to a foreclosure sale just like it could be done in a chapter 13 under section 1322 of the U.S. Bankruptcy Code." In any event, the court gave the parties ample opportunity to present all theories upon which they relied at oral argument at the October 27 and November 29 hearings, and neither party requested leave to file further briefings on the legal issue, though both noted remaining factual disputes with respect to the underlying motions.

The parties both agree that notwithstanding entry of an Illinois foreclosure judgment and expiration of the statutory redemption period a debtor may through a Chapter 13 plan cure a default with respect to a mortgage on the debtor's principal residence until such residence is sold at a foreclosure sale conducted in accordance with applicable nonbankruptcy law. *See, e.g., Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 920 (7th Cir. 2003). The parties also agree that a debtor may through a Chapter 13 plan cure any default "within a reasonable time and maint[ain] payments while the case is pending" for a mortgage loan in which the last payment is due after the date on which the final payment under the plan is due. *See* 11 U.S.C. § 1322(b)(5). They disagree, however, as to whether such cure, reinstatement and maintenance of a defaulted mortgage loan is permitted in Chapter 11, at least where the petition is filed after the statutory redemption period under state law has expired.

The court in *In re Lennington*, 288 B.R. 802 (Bankr. C.D. Ill. 2003), addressed this same issue and concluded that a Chapter 11 debtor, too, can cure a default in an Illinois home mortgage loan through installment payments under a Chapter 11 plan

and reinstate the loan and that such cure is not an impermissible modification of the rights of the holder of that secured claim. This court agrees.

Chapter 11 provides express authority to cure a default in a pre-petition loan through a Chapter 11 plan. A Chapter 11 debtor through a plan may "impair or leave unimpaired any class of claims, secured or unsecured." 11 U.S.C. § 1123(b)(1). The Bankruptcy Code states that the plan shall "provide adequate means for the plan's implementation, such as ... curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). The Bankruptcy Code even provides that cure through a Chapter 11 plan will not result in the claim being considered "impaired," at least in some circumstances.[2] Because Chapter 11 provides independent authority for such cure, the Debtor does not need to rely on state law rights to redeem the property. Like the debtor in *In re LaMont*, 740 F.3d 397 (7th Cir. 2014), the Debtor here seeks not to formally redeem his property but rather to treat Wells' claim through his bankruptcy plan. *Id.* at 409 (7th Cir. 2014) ("The plan is treating his secured claim, not formally redeeming the property.")

Wells Fargo contends that cure through a plan is only permissible if permitted under state law unless otherwise expressly authorized by the Bankruptcy Code, as in Section 1322(c)(1). That provision states that "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law ... a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of

---

[2] A Chapter 11 plan may de-accelerate and reinstate a defaulted loan and the claim will be treated as "unimpaired" so long as it cures the default, reinstates the original maturity date, compensates the holder of the claim for certain damages incurred and does not otherwise alter the rights of the holder. *See* 11 U.S.C. § 1124.

subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. §1322(c)(1). Wells Fargo argues that because Chapter 11 does not have a corresponding provision, the right to "cure" a default through a plan is only allowable if permitted under applicable non-bankruptcy law.

This argument, however, does not bear close scrutiny. The Debtor need not rely upon a provision such as Section 1322(c)(1) to authorize cure, since that section does not create an independent right to cure. By its own terms the section only qualifies the right to cure provided by Sections 1322(b)(3) and (5), placing temporal limits on when such powers can be exercised. The Seventh Circuit explored these temporal limits in *Colon v. Option One Mortg. Corp.*, 319 F.3d 912 (7th Cir. 2003). There the court noted that Section 1322(c)(1) is permissive, not restrictive, and does not limit the exercise of cure rights provided by state law beyond such period. 319 F.3d at 918 ("However, if the State provides the debtor more extensive 'cure' rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.") (quoting 140 Cong. Rec. H10,769 (daily ed. Oct. 4, 1994) (remarks of Rep. Jack Brooks)). But in examining the outer limit on the permissible use of Sections 1322(b)(3) and (5) to cure a default, the court held such sections could not be used to cure a default beyond completion of an Illinois judicial auction. 319 F.3d at 920 ("[W]e cannot conclude that the convergence of § 1322(c) and Illinois foreclosure law provides anything like an absolute right to cure a default up until the time of the confirmation hearing.").

True, the 1994 amendments adding Section 1322(c)(1) to the Bankruptcy Code thereby potentially expanded the right to cure under subsections (b)(3) and (5) from what existed prior to the amendment. The legislative history makes clear that the provision was at least in part in response to the Third Circuit's ruling in *In re Roach*, 824 F.2d 1370 (3rd Cir. 1987). In *Roach*, court had held that because under New Jersey law, "the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished," after entry of a foreclosure judgment in New Jersey "there is no longer a mortgage to be cured and restored and the authority conferred by § 1322(b)(5) is simply inapplicable." 824 F.2d at 1377. The enactment of Section 1322(c)(1) altered that result. As the Seventh Circuit explained in *Colon*, "§1322(c)(1) of the Bankruptcy Code provides a statutorily protected right to cure at least until the foreclosure sale" notwithstanding state law to the contrary. 319 F.3d at 920. Thus, this provision "gives the debtor more protection than" state law requires. *Id.*

But here the Debtor does not need to rely on any expansion of authority under Section 1322(c)(1). Nor does the absence of a similar provision expanding the powers conferred in Section 1123(a)(5)(G) preclude his ability to cure and reinstate the loan from Wells Fargo through a Chapter 11 plan. Even before the 1994 amendments, the Seventh Circuit had held that a Chapter 13 plan could provide for de-acceleration of a mortgage after foreclosure judgment and cure through installments payments. *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984). In another pre-amendment case, *In re Madison Hotel Associates*, 749 F.2d 410 (7th Cir. 1984), the Seventh Circuit indicated

such cure was permitted through a Chapter 11 plan as well. In it the court held that there "is no doubt that section 1124(2) embodies Congress' intent to allow the Chapter 11 debtor to cure the default of an accelerated loan and reinstate the original terms of the loan agreement, without impairing the creditor's claim." 749 F.2d at 420.

Both *Madison Hotel* and *Clark* involve the rights of debtors who filed bankruptcy petitions after Wisconsin foreclosure judgments but before sale. Both opinions expressly did not reach whether the same result obtains in a state in which the effect of a judgment of foreclosure is different. 738 F.2d at 874; 749 F.2d at 423 n.11. *In re Clark* emphasizes that in Wisconsin "[n]either equitable nor legal title passes until the foreclosure sale is held." 738 F.2d at 871. The court in *Madison Hotel* states that it did "not address the issue of what effect a judgment of foreclosure has upon a Chapter 11 debtor's attempt to cure the default of an accelerated loan in a state where the mortgage merges with the judgment, thereby vesting title in the mortgagee." 749 F.2d at 423 n.11.

It is clear that under Illinois law, like the law of Wisconsin examined in *Clark* and *Madison Hotel*, entry of a foreclosure judgment does not transfer title to the property, which in both states does not occur until after sale. Indeed, in this state title transfers much later. Under Illinois law, "the highest bid received by a sheriff at a judicial foreclosure sale is merely an irrevocable offer to purchase the property. The offer is not deemed to have been accepted and the sale is not complete until it has been confirmed by the circuit court." *Household Bank, FSB v. Lewis*, 890 N.E.2d 934, 939 (Ill. 2008) (Circuit court was not obligated to confirm foreclosure sale after

mortgagee withdrew its motion for confirmation). Both *Clark* and *Madison Hotel* reference the transfer or vesting of title. Thus, if the proper dividing line for cure in a Chapter 11 is the transfer of title, a debtor may still cure a default under an Illinois mortgage loan prior to sale.

*In re Madison Hotel* also distinguishes Wisconsin law from states "where the mortgage merges with the judgment," perhaps referencing the Third Circuit's reasoning in *Roach*. On this point, it is long established that "where a judgment is obtained on a contract, the contract is at an end, being merged in the judgment, and the judgment is controlled, not by the contract, but by the statute." *Aldrich v. Sharp*, 4 Ill. 261, 263 (1841). Further, regarding this principle the Illinois Supreme Court has found "no reason why the rule should not be applicable to decrees in chancery for the foreclosure of mortgages." *Id. See also, e.g., BAC Home Loans Servicing, LP v. Popa*, 30 N.E.3d 611 (Ill. App. Ct. 2015). Both *Aldrich* and *Popa* addressed whether post-foreclosure interest should accrue based on the contract or based on the statutory rate of interest for judgments.

However, the Illinois Supreme Court has also suggested limitations on the merger doctrine. In *Williams v. Brunton*, referencing *Aldrich*, the Illinois Supreme Court stated:

> It is true that a judgment or decree may, for some purposes, be considered as an extinction of the original cause of action; for instance, for the purpose of regulating the interest on money to which a party is entitled before final satisfaction of the debt, as was the case in [*Aldrich*], to which authority the appellant has directed our attention. But it is equally true, that for many other purposes, as for the ascertaining of priority of liens, for instance, the principle of extinction or merger finds no application.

8 Ill. 600, 622 (1846). *See also, e.g., In re Daniels*, 102 B.R. 680, 683 (N.D. Ill. 1989) ("The potentially sweeping scope of [*Aldrich's*] holding was subsequently clarified and thereby narrowed in *Williams v. Brunton*"). Additionally, in Illinois it "is well settled that a judgment ordering the foreclosure of mortgage is not final and appealable until the trial court enters an order approving the sale and directing the distribution," because "it does not dispose of all issues between the parties and it does not terminate the litigation." *EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. App. Ct. 2012). The appellate court in *RFO Holdings, Inc. v. Metropolitan Capital Bank* discussed this lack of finality, concluding that the "merger doctrine is not absolute and exceptions exist." 2017 IL App (1st) 153360-U, 2017 WL 2540731 (Ill. App. Ct. June 8, 2017) (citing *Kenny v. Kenny Indus., Inc.*, 2012 IL App (1st) 111782, 16 (Ill. App. Ct. July 24, 2012)).

The addition of Section 1322(c)(1) by the 1994 amendments to the Bankruptcy Code clarified the issue with respect to Chapter 13. Since then there has been little occasion for courts to consider the interplay of the merger doctrine with cure and reinstatement through a bankruptcy plan. Prior to the amendments, the 7th Circuit had not directly addressed whether Illinois' limited application of the merger doctrine prevents cure and reinstatement through a bankruptcy plan post-foreclosure judgment, and there was a split in authority among lower courts. *Compare, e.g., In re Jenkins*, 14 B.R. 748 (Bankr. N.D. Ill. 1981) (concluding that the Illinois "mortgage [had] merged into the judgment" and therefore Section 1322(b)(5) was "inapplicable") *with In re Young*, 22 B.R. 620, 621 (Bankr. N.D. Ill. 1982) (finding, in part due to the

rehabilitative purposes of Chapter 13, that cure of an Illinois mortgage under Section 1322(b)(5) was permitted after foreclosure judgment). By 1994, the trend and majority approach in the Northern District of Illinois appears to have permitted cure through Section 1322(b) even after an Illinois foreclosure. *See, e.g., In re Jackson*, Case No. 93-B-8835, 1993 WL 340926 (Bankr. N.D. Ill. Aug. 31, 1993) ("The relationship of mortgagor and mortgagee is not terminated by foreclosure judgment and the right to cure under § 1322(b)(5) of the Bankruptcy Code survives until there has been a judicial sale of the mortgaged property").[3]

A 1985 decision of the Seventh Circuit, *In re Tynan*, states that Section 1322(b)(5) is "inapplicable because there was no default to cure after [an Illinois] judgment of foreclosure was entered." 773 F.2d 177, 178 (7th Cir. 1985). However, the decision holds so not because of the merger doctrine but because a third-party purchaser at auction had "satisfied the debt which the Tynans owed to the bank that had made the mortgage loan upon the property." 773 F.2d at 178. Therefore, it was the sale that the Court of Appeals found material in *Tynan*, not the foreclosure judgment. Under the terms of the Illinois Foreclosure Act in effect at the time of the *Tynan* case, debtors had a right of redemption for six months after the sheriff's sale. 773 F.2d at 178. However, the Foreclosure Act was amended in 1987, and under the revised statute "judicial sale occurs only after the redemption period has expired and the mortgagor has not exercised his right of redemption." *In re Josephs*, 93 B.R. 151,

---

[3] Citing *In re Josephs*, 93 B.R. 151 (N.D. Ill. 1988) and *In re Daniels*, 91 B.R. 51, 54 (Bankr. N.D. Ill. 1988), the court in *Jackson* concluded that *In re Jenkins* "was decided under the old foreclosure law in Illinois" and was less-well "reasoned in light of Illinois and circuit authority." 1993 WL 340926.

152–53 (N.D. Ill. 1988). The court in *Josephs* went on to distinguish *Tynan* to find that the Chapter 13 debtor's right to cure an Illinois mortgage under Section 1322(b)(5) was not "cut off when FNMA secured foreclosure judgment against Josephs or, alternatively, when the redemption period expired." 93 B.R. at 154-55.

This court agrees that the better approach prior to the 1994 amendments and addition of Section 1322(c)(1) would be to permit Chapter 13 and Chapter 11 debtors to cure and reinstate an Illinois mortgage where a foreclosure judgment had entered and the statutory redemption period had expired both pre-petition and before the foreclosure sale. This court agrees that this remains the better approach for Chapter 11 cases following the 1994 amendments. The addition of Section 1322(c)(1) with the 1994 amendments did not limit the scope of cure under Chapter 11. The "impetus" for the amendment was not to limit the ability to cure in Chapter 11, but rather "Congress' desire to overturn the Third Circuit's holding in *In re Roach*." *Colon*, 319 F.3d at 917. Therefore, the court must conclude that the pre-petition foreclosure judgment and expiration of the statutory redemption period in this case does not prevent the Debtor from proposing a plan to cure and reinstate the mortgage loan from Wells Fargo.

Wells Fargo's remaining argument is that the Debtor may not provide for cure and reinstatement of its loan because of the "anti-modification provision found in Chapter 11." Section 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders

of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5) (emphasis added). Wells Fargo contends that because its mortgage is in the Debtor's principal residence, Section 1123(b)(5) prevents the Debtor from curing and reinstating its loan through his Chapter 11 plan. The statutory provision is identical to Section 1322(b)(2) and was added to the Bankruptcy Code in 1994 "to conform[] the treatment of residential mortgages in chapter 11 to that in chapter 13, preventing the modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence." H.R. REP. 103–835, 46, 1994 U.S.C.C.A.N. 3340, 3354. *See also Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 6 (1st Cir. 1996) ("The legislative history of § 1123(b)(5) reveals that Congress deliberately tracked the antimodification language of § 1322(b)(2) and intended conformity of treatment between Chapter 13 and Chapter 11.")

In discussing the identical Section 1322(b)(2), the Seventh Circuit has held that that provision does not prevent cure and reinstatement of a mortgage loan through a plan. *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984). While "cure" is not specifically defined in the Bankruptcy Code, the Seventh Circuit held that the plain meaning of the term is "to remedy or rectify the default and restore matters to the *status quo ante.*" 738 F.2d at 872. This "necessarily includes the power to de-accelerate the payments on" a note. 738 F.2d at 872. Highlighting that it was "clear that Congress intended 'cure' to mean something different from 'modify,'" the court concluded that cure of a past default and de-acceleration was "not a form of modification banned by [Section 1322(b)(2)] but rather is a permissible and necessary

concomitant of the power to cure default." 738 F.2d at 871-72. While *Clark* involved interpretation of Section 1322(b) not Section 1123(b), the Supreme Court has noted that courts "are generally reluctant to give the 'same words a different meaning' when construing statutes." *Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995, 2000-01 (2015) (quoting *Pasquantino v. United States*, 544 U.S. 349, 358 (2005)).

Such cure may be made through installments. *Lennington*, 288 B.R. 802, 805 (Bankr. C.D. Ill. 2003) (citing *Valente v. Savings Bank of Rockville*, 34 B.R. 362 (D. Conn. 1983)). Although Chapter 13 more clearly provides for cure over time in Section 1322(b)(5), the absence of a similar provision in Chapter 11 is not an indication that cure in installments is not permitted. As noted by the court in *Lennington*, the purpose, structure and history of Chapter 11 and Chapter 13 are very different and "the provisions of Chapter 11 and Chapter 13 are not at all parallel." 288 B.R. at 804. Chapter 11 provides a broad right for "curing or waiving of any default" in Section 1123(a)(5)(g). This right is not narrowed by the absence of the more specific provision "for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

Most notably, Chapter 13 places strict limits on the length of a plan not found in Chapter 11. A bankruptcy court "may not approve a period [for payments under a Chapter 13 plan] that is longer than 5 years." 11 U.S.C. § 1322(d). No such restriction limits Chapter 11 plans. As explained by the court in *In re Clark*, "Subsection (b)(5)

[of Section 1322] related to long-term obligations not subject to discharge since the term of their payment extended beyond the expiration of the plan." 738 F.2d 869, 873 (7th Cir. 1984). Together with Section 1328(c)(1) whereby debts "provided for under section 1322(b)(5)" are excepted from discharge, Section 1322(b)(5) provides a mechanism to cure and maintain a long-term debt within the maximum five-year term of the plan even though repayment of the remaining portion of the debt will extend beyond that term. Such a mechanism plainly is not needed for the more flexible Chapter 11, where even a long-term debt can be provided for 'within' the plan.

Finally, it is notable that in 1994 the Code was amended to place restrictions on the *amount* necessary to cure a default, but not as to time to make such cure. The amendments added Section 1123(d), which provides that notwithstanding Section 1123(a), "if it is proposed in a plan to cure a default the *amount* necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d) (emphasis added).[4] This provision potentially provides some compensation or protection for the creditor if cure payments are to be made over time, at least to the extent the underlying agreement and applicable nonbankruptcy law provided for interest or other charges on such outstanding amounts.

---

[4] The legislative history for that amendment shows that "Congress was primarily concerned with overruling the Supreme Court's decision in *Rake v. Wade*, 508 U.S. 464 (1993)." *In re New Investments, Inc.*, 840 F.3d 1137, 1141 (9th Cir. 2016) (citing H.R. Rep. No. 103-835, at *55 (1994)). *Rake* had held that a "Chapter 13 debtor who proposed to cure a default was required to pay interest on his arrearages to a secured creditor even if the underlying loan agreement did not provide for such interest." *Id.* Congress "viewed this as an untoward result that allowed for 'interest on interest payments' and provided an unbargained-for windfall to creditors." *Id.*

For the reasons set forth above and the reasons set forth in *In re Lennington*, the court finds that Chapter 11 provides authority to cure and reinstate an Illinois mortgage debt through a plan of reorganization even after a foreclosure judgment is entered and the statutory period of redemption has expired so long as the petition is filed prior to sale of the property.

Here, it is undisputed that the sale occurred after the petition date and without this court's prior approval. Therefore, unless the court grants Wells' request for annulment, the sale appears to have been void or voidable as in violation of the automatic stay.

As to the request for annulment, the request for stay relief and the request for annulment, those matters include factual disputes. For example, Wells alleges that it was without knowledge of the bankruptcy case when it allowed the sale to proceed and that it did so in good faith. Wells also alleges that the Debtor is financially unable to propose a feasible plan of reorganization and that he filed the case in bad faith for the sole purpose of delaying Wells' attempts to collect its debt through the foreclosure proceeding. The Debtor denies these allegations.[5] The matters will, therefore, be

---

[5] The Debtor suggests that the judge sitting in this case at the October 27, 2017 hearing made a factual determination as to the Debtor's general good faith in commencing this case, referring the court to the Order entered by Judge Altenberger granting the Section 362(c)(3) motion to extend the automatic stay "to all creditors ... with the exception of Wells Fargo Bank." (ECF No. 27.) This simple Order, the form of which was prepared by Debtor's counsel, includes a formulaic recitation that the "debtor(s) [sic] have established good and sufficient cause to grant [the requested] relief." The very next paragraph carves out an exception for Wells Fargo with respect to which the court granted Debtor an interim extension of the stay for further hearing. At the October 27 hearing, Wells Fargo raised among other things whether this case was filed in good faith after which argument was heard whether the Debtor's prior case was filed in good faith, upon which Judge Altenberger ordered further briefing on the legal issue addressed in this Opinion and continued the motions. It is not evident that Judge

continued for an evidentiary hearing to be conducted on December 14, 2017.

DATE: December 5, 2017         ENTER:       /s/ Thomas M. Lynch

Thomas M. Lynch
United States Bankruptcy Judge

---

Altenberger made any factual findings as to Wells Fargo. At the November hearing, Wells Fargo maintained that it still needs to be heard on this factual issue as it applies to it. In any case, this court invited the parties to further reconsider what probative factual issues remain and to file a joint stipulation two days before trial regarding factual points on which they now agree.